IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

JANINE BILYEU )
)  No. 3-05-0579
v. )
)
METROPOLITAN GOVERNMENT OF )
NASHVILLE-DAVIDSON COUNTY )

MEMORANDUM

The plaintiff, represented by M. Katherine Everette, filed this lawsuit on July 25, 2005, asserting claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq. based on the defendant's retaliation because she had previously filed a Title VII charge and a lawsuit for sexual harassment against the defendant. See Docket Entry Nos. 1 and 15. On November 21, 2005, Trippe S. Fried also entered an appearance on behalf of the plaintiff (Docket Entry No. 10).

By orders entered December 12, 2005 (Docket Entry No. 15-16), deadlines for the progression of the case were established and a jury trial was scheduled on January 9, 2007. After a status conference held on October 30, 2006, and by order entered October 31, 2006 (Docket Entry No. 31), deadlines were extended and the trial was rescheduled to August 7, 2007.

On March 19, 2007, the defendant filed a motion for summary judgment, which was not fully briefed until May 25, 2007. See Docket Entry Nos. 34-39, 41-49, and 51-55. By order entered July 23, 2007 (Docket Entry No. 67), the July 23, 2007, pretrial conference and August 7, 2007 trial were cancelled, "to be rescheduled as appropriate after the resolution of the defendant's motion for summary judgment (Docket Entry No. 34)."

The July 23, 2007, order also noted that the defendant had filed a consolidated motion in limine (Docket Entry No. 58), to which no response had been filed. As a result, the Court indicated

that it "assumed that the plaintiff had no opposition to that motion in accord with Local Rule 7.01(b)."[1]

On August 1, 2007, the parties filed a stipulation of dismissal with prejudice, signed by counsel for both parties (Docket Entry No. 68). The parties anticipated the Court's approval by providing a signature line on the stipulation,[2] and the Court approved and entered the stipulation as an order on August 2, 2007 (Docket Entry No. 70). By contemporaneous order also entered on August 2, 2007 (Docket Entry No. 69), the Court denied the defendant's motion for summary judgment (Docket Entry No. 34), the defendant's motion in limine (Docket Entry No. 58), and the defendant's motion to strike (Docket Entry No. 55) as moot.

On August 9, 2007, and August 13, 2007, the plaintiff filed the first of several motions (Docket Entry Nos. 72-73, 84, and 90), and the defendant filed its motion to enforce settlement (Docket Entry No. 74). Those motions and related filings (Docket Entry Nos. 72-90) address the issue of whether the order of dismissal should be set aside and/or whether the settlement agreement should be enforced.

From those filings, it appears that the following chronology of events occurred. The parties had engaged unsuccessfully in settlement negotiations the week of July 16, 2007. Docket Entry No. 72, at 2. On July 23, 2007, plaintiff's counsel advised the plaintiff by email that the trial had been continued, and by a separate email on the same date, suggested that "[w]hatever window for

---

[1] Local Rule 7.01(b) provides, in relevant part, that:

> Each party opposing a motion shall serve and file a response, memorandum, affidavits and other responsive material not later than ten (10) days after service of the motion, except in cases of a motion for summary judgment, that time shall be twenty (20) days after the service of the motion, unless otherwise ordered by the court. Failure to file a timely response shall indicate that there is no opposition to the motion. . . .

[2] In accord with Rule 41(a)(1)(ii) of the Federal Rules of Civil Procedure, Court approval is not technically required upon the filing of a stipulation of dismissal.

settlement remains is shrinking rapidly," but that his "aim is not to force [the plaintiff] into making a decision that [she does] not want to make . . . ." Docket Entry No. 73-1, at 41.

On July 26, 2007, the plaintiff re-initiated settlement negotiations. Docket Entry No. 72, at 2; Docket Entry No. 80, at 2.[3] The afternoon of Thursday, July 26, 2007, the parties reached an oral settlement agreement. See Docket Entry No. 75, ¶ 4. On July 27, 2008, the plaintiff was presented with a settlement agreement, prepared by Kevin C. Klein, counsel for the defendant, which she signed at her attorneys' office.

In that settlement agreement, the plaintiff agreed to accept the sum of $20,000.00, including attorneys' fees, in settlement of her claims in this case, in the case of Bilyeu v. Metropolitan Government of Nashville/Davidson County and Phillip Schuller, 3-06-0718, and in the case of Bilyeu v. City of Nashville, No. 04-1459-III, pending in the Davidson County Chancery Court. See Docket Entry No. 73-1, at 28-34. The executed settlement agreement was emailed to defendant's counsel on July 29, 2007, which defendant's counsel signed on July 30, 2007. See Docket Entry Nos. 75; 73-1, at 35. On July 30, 2007, plaintiff's counsel advised defendant's counsel that the plaintiff was having "second thoughts about the settlement." Docket Entry No. 75, but, on August 1, 2007, plaintiff's counsel filed the agreed order of dismissal with prejudice in this case and similar agreed orders of dismissal in the other two cases, Docket Entry No. 75, ¶¶ 8-9, and the defendant provided a settlement check to plaintiff's counsel. Id. at ¶ 10.

On July 29, 2007, the plaintiff had "voided" the agreement, by marking "void" on each page, and had faxed the "voided" agreement to her counsel, Katherine Everette. See Docket Entry No. 73-1, at 17-26.

---

[3] In plaintiff's motion to reset trial (Docket Entry No. 72), she indicates that settlement discussions were re-initiated on July 26, 2007. In Mr. Klein's affidavit (Docket Entry No. 75), he attests that plaintiff's counsel initiated settlement discussions on either Tuesday, July 26, 2007, or Wednesday, July 27, 2007. As she noted in her reply (Docket Entry No. 80), the plaintiff is correct that Mr. Klein's dates are incorrect, since he refers to Tuesday, July 26, 2007 (since Tuesday was July 24, 2007), and Wednesday, July 27, 2007 (since Wednesday was July 25, 2007).

3

Plaintiff's Rule 60(b) Motion to Set Aside

The plaintiff seeks relief from the August 2, 2008, order of dismissal pursuant to Rule 60(b) of the Federal Rules of Civil Procedure,[4] which provides as follows:

> On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud . . . misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment. . . . [5]

Relief under Rule 60(b) "is circumscribed by public policy favoring finality of judgments and termination of litigation." Green v. BP Prod., Inc., 169 Fed. Appx. 951, 960 (6th Cir. Feb. 23, 2006), cert. denied, 546 U.S. 1094, 126 S.Ct. 1069, 163 L.Ed.2d 862 (2006); Doe v. Lexington-Fayette Urban Cty Gov't, 407 F.3d 755, 760 (6th Cir. 2005); Thomas v. Thistledown, Inc., 2006 WL 3483953 (N.D. Ohio Nov. 30, 2006).

Although the Rule 60(b) motion was premature since the August 2, 2008, order was not a final judgment at the time the plaintiff filed her motions, the Court will analyze the motion under Rule 60.[6]

The plaintiff asserts that on July 29, 2008, she "became aware of new evidence that she believed could have effected (sic) the outcome of her case, and Summary Judgment." Docket Entry

---

[4] The plaintiff also cites Rule 61, which addresses the impact of harmless error, and Rule 62, which addresses stay of proceedings to enforce a judgment, neither of which have any applicability to the issues raised by the plaintiff.

[5] The quoted portion of Rule 60(b) is from the version of Rule 60(b) in effect at the time the plaintiff filed her motion to set aside, not the current version, amended as of December 1, 2007.

[6] Since the plaintiff's first motion was filed within ten working days of entry of the order of dismissal, see Rule 6(a) of the Federal Rules of Civil Procedure, it could have been filed pursuant to Rule 59(e) of the Federal Rules of Civil Procedure. A Rule 59(e) motion may be granted (1) to correct a clear error of law; (2) to account for newly discovered evidence or an intervening change in the controlling law; or (3) otherwise to prevent manifest injustice. GenCorp, Inc. v. American Int'l Underwriters, 178 F.3d 804, 834 (6th Cir. 1999).

4

No. 73, at 2. Apparently, the "new evidence" to which the plaintiff refers is her discovery of the July 23, 2007, order, and particularly the portion of the order in which the Court noted that it assumed that the plaintiff had no opposition to the defendant's motion in limine.

However, it does not appear that the plaintiff seeks to set aside the August 2, 2008, order pursuant to Rule 60(b)(2). The plaintiff asserts that she signed the settlement agreement under duress, Docket Entry No. 72, at 2, and thus she appears to invoke Rule 60(b)(1). In her reply, she explains that she suffers from depression and anxiety and that her counsel placed "improper external pressure or influence which resulted in procuring her signature on an agreement that she had not thoroughly read." Docket Entry No. 80, at 3.

The plaintiff also described "misrepresentations" made by her counsel that "created unexpected pressure a 'sense of urgency' for plaintiff," Docket Entry No. 80, at 2, thus invoking Rule 60(b)(3). The plaintiff believes that her attorney misrepresented to her "the reason for the cancellation of the pretrial conference and trial." It appears that somehow the plaintiff is tying the trial cancellation to the comment by the Court that it assumed that the plaintiff did not oppose the defendant's motion in limine. Docket Entry No. 88, at 6. Although not clear, it appears that the plaintiff believed that the "misrepresentations" were the fact that plaintiff's counsel had not responded to the defendant's motion in limine, that the trial had been postponed "indefinitely," and that the postponement of the trial did not bode well for her. Id.

In her reply, she also alludes to setting aside a settlement agreement on the basis of fraud or mutual mistake of fact, id. at 5, and concedes that, although "certain terms had been conveyed" to her, she was "ill-advised about the exacting content of the provisions" of the settlement agreement. Id. The Court assumes that the plaintiff was referring to the oral settlement agreement prior to her signing the written agreement. However, the plaintiff has not set forth what terms of the written settlement agreement differed from the "certain terms" that had previously been conveyed to her. The plaintiff also made clear that she is not asserting that she was coerced into entering into the

5

settlement, but that her counsel misrepresented the facts to her to "induce her to act to . . . her detriment." Docket Entry No. 88, at 5.

The plaintiff also cited to her previous experience in negotiations with the defendant in a previous lawsuit, which was the subject of the pending lawsuit in Chancery Court, concluding that her "obvious skepticism," coupled with the "pressure by her own attorneys to sign without reading the entire contents" of the agreement "established an environment of confusion." The plaintiff explains that the "totality of the circumstances" indicate that she was under "much duress" the week before the "settlement conference," and "leading up to and during the settlement conference which under Tennessee law created a 'condition of mind' that practically destroyed [her] free agency," causing her to "make a contract not of [her] own volition but under such wrongful external pressure,"[7] citing "Rainey, id."[8]

It appears that the plaintiff was particularly concerned that the settlement included not only this case and the Chancery Court case, but also the "Officer Schuller" matter, i.e., the case of Bilyeu v. Metropolitan Government, 3-06-0718, in which the plaintiff was represented by Patrick Frogge. She also explained that Mr. Frogge was not present on July 27, 2007, and that he later told her he felt left "out of the loop." Docket Entry No. 80, at 6. However, the parties filed an agreed order of dismissal on July 30, 2007, dismissing the plaintiff's claims against the Metropolitan Government (Docket Entry No. 31 in case 3-06-0718) and an agreed order of dismissal was filed on August 1, 2007, dismissing the plaintiff's claims, including her claims against defendant Phillip Shuler (Docket Entry No. 32 in case 3-06-0718). Case No. 3-06-0718 was dismissed by order entered August 6, 2007 (Docket Entry No. 33 in case 3-06-0718). The plaintiff did not move to set aside that order.

---

[7] The plaintiff filed an affidavit of William Q. Acree (Docket Entry No. 81), who accompanied the plaintiff to her attorneys' office on July 27, 2007, and who attested to her emotional state at the time.

[8] The Tennessee Court Appeals in Rainey v. Rainey, 795 S.W.2d 139 (Tenn. Ct. App. 1990), quoted Simpson v. Harper, 111 S.W.2d 882, 886 (Tenn. 1937). Those cases were cited by both parties to set forth the Tennessee law on duress.

Case 3:05-cv-00579   Document 94   Filed 03/31/08   Page 6 of 11 PageID #: 600

The plaintiff also describes a conversation with her counsel on July 30, 2007, in which Mr. Fried "threatened with a suit of Specific Performance and attorney's fees by Metro if she did not execute the agreement" and with his own attorney's lien if the plaintiff reneged on the agreement. Docket Entry No. 80, at 7. See also Docket Entry No. 85, at 1.

The parties and Mr. Fried seek a hearing in this case. It appears that Mr. Fried seeks a hearing to defend himself against the plaintiff's allegations. The parties do not indicate what they would present at a hearing that they have not already included in their filings. Although a hearing would be appropriate if there were disputed facts, the Court will accept the plaintiff's allegations set forth in her filings for the purpose of ruling on the motions before the Court.[9] Under these circumstances, there is no reason to have a hearing to make factual determinations from contradictory allegations. Although Mr. Fried's motivation for seeking a hearing is understandable, the Court finds that it is not necessary for the resolution of the pending motions to allow Mr. Fried an opportunity to rebut the plaintiff's allegations or for the Court to make findings of fact.

Accepting all allegations made by the plaintiff as true, the Court finds that none of her allegations support setting aside the order dismissing this case. Simply put, none of the plaintiff's allegations of misrepresentations or coercion by her counsel present sufficient grounds under Rule 60(b) to set aside the dismissal order.

Mr. Fried (and presumably Ms. Everette) gave the plaintiff their advice about whether or not she should enter into a settlement. That advice was included in Mr. Fried's email of July 23, 2007, in which he wrote to the plaintiff:

> The court called this morning and advised that both the pretrial conference and the trial have been continued indefinitely because of the pending Motion for Summary Judgment. While I cannot pretend to know why the court ordered the continuance, my belief is that this does not bode well for your case. Unless the judge has not had the opportunity to review the motion--certainly a distinct possibility--the signal to me is that the motion will be granted and the case dismissed. Whatever window for settlement remains is shrinking rapidly.

---

[9] In very limited circumstances, the Court has referred to matters in the defendant's filings to which the plaintiff has not expressed any disagreement.

Docket Entry No. 73-1, at 40.

In that email, Mr. Fried advised that he could not "pretend to know why the court ordered the continuance," but provided the plaintiff with his interpretation. The role of counsel is to provide such advice based on the facts available and circumstances at hand and the uncertainty of knowing what the Court's ruling would be. He clearly stated that he could not be sure of the implications of the trial being continued. As significantly, Mr. Fried wrote to the plaintiff that "his aim [was] not to force [the plaintiff] into making a decision that [she did] not want to make." Docket Entry No. 73-1, at 41.

It was the plaintiff's choice at that point to "re-initiate" settlement discussions. She chose to do so.

It clearly appears that settlement negotiations between the plaintiff and defendant ensued thereafter, and on July 26, 2007, an oral agreement was reached. Based on that oral agreement, defendant's counsel faxed a settlement agreement and release to plaintiff's counsel. The plaintiff came to her attorneys' office on July 27, 2007, and was presented with the settlement agreement. She signed the settlement agreement, initialing every page. She asserts that she was given approximately 15 minutes to read her agreement and her counsel told her that the defendant's attorney was "waiting in [plaintiff's counsel's] conference room" for the signed agreement. Docket Entry No. 88, at 4.

However, the plaintiff has not made any allegation that she was unable to advise her attorneys that she needed more time to review the agreement or that she could not refuse to sign the agreement. As the plaintiff herself has pointed out, she had "obvious skepticism" about entering into a settlement agreement with the defendant because of her previous experience with a settlement with the defendant. Although the Court acknowledges that her previous litigation history does not necessarily, as the defendant intimates, indicate that the plaintiff is a sophisticated litigator, see Docket Entry No. 77, at 13, she clearly was not naive.

8

As the plaintiff read through the agreement, she realized that Mr. Fried "had assigned himself as trustee," although she had "assigned Ms. Everette as trustee." Id. The Court assumes that the plaintiff referred to Part II(1) of the agreement, in which payment was to issue, payable jointly to the plaintiff and Mr. Fried and that the funds were to be distributed from Mr. Fried's trust fund account. However, the plaintiff changed the provision to reflect that payment would be made to Ms. Everette and the plaintiff rather than to Mr. Fried and the plaintiff. The relevance of the original provision in the agreement, prepared by the defendant, is not clear.

The plaintiff emphasizes a "misrepresentation" of her attorney related to the provision in the July 23, 2007, order that the plaintiff had not responded to the defendant's motion in limine and thus the Court assumed the plaintiff had no objection to the motion. The significance of this issue is not clear. Even if the plaintiff had not previously realized that her attorney had not responded to the defendant's motion in limine, the Court did not grant the defendant's motion, but rather pointed out that there had been no opposition filed to it. Plaintiff's counsel was not barred from filing a response in opposition even at that point. Further, to the extent that the plaintiff believes that the failure to respond to the motion in limine would have somehow impacted the Court's ruling on the defendant's motion for summary judgment, the plaintiff is incorrect. The motion in limine solely addressed trial matters and was unrelated to the defendant's motion for summary judgment.

The plaintiff's concern that she intended to carve out the "Officer Schuller" matter from the settlement is belied by her agreement to the settlement that clearly set forth on the first and second pages (which the plaintiff clearly read since she made changes to the agreement on page 2) that the settlement agreement encompassed that lawsuit and is also belied by the fact that the plaintiff did not file a motion to set aside the order of dismissal in the "Officer Schuller" case.

Plaintiff's counsel provided her with advice on the benefits of settlement, the risks of the defendant's motion for summary judgment being granted, particularly the risk that the defendant would seek an award of costs against her, and the potential ramifications of her reneging on the settlement agreement, specifically that the defendant could sue for specific performance and that her

9

own counsel could file attorney liens. Even if this advice made the plaintiff feel pressured, the advice contained information that the plaintiff needed to know and her counsel would have been remiss in not providing it.

Accepting all of the plaintiff's allegations as true, the Court cannot find that her lawyers made any false representations to her, much less misrepresentations that would destroy the plaintiff's "free agency," as she asserts.

Defendant's Motion to Enforce Settlement Agreement

Although the Court agrees with the defendant that it has the authority to enforce settlements, whether oral or written, under certain circumstances, the question is whether, after entry of the order of dismissal with prejudice,[10] the Court retains jurisdiction to enforce the settlement agreement reached that led to the parties' filing a stipulation of dismissal. In the stipulation and order of dismissal, the parties noted that they had entered into "an agreement compromising and settling all claims asserted by the Plaintiff in the instant action." However, the stipulation and order did not incorporate the terms of the settlement agreement nor did they even recite the terms of the agreement nor did they provide that the Court retained jurisdiction to enforce any such settlement agreement. See Kokkonen v. Guardian Life Ins. Co., 511 U.S. 375, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994); McAlpin v. Lexington 76 Auto Truck Stop, Inc., 229 F.3d 491, 500-505 (6th Cir. 2000), cert. denied, 532 U.S. 905, 121 S.Ct. 1229, 149 L.Ed.2d 139 (2001); Caudill v. North Am. Media Corp., 200 F.3d 914 (6th Cir. 2000); Hinsdale v. Farmers Nat'l Bank & Trust Co., 823 F.2d 993 (6th Cir. 1987). Cf. Re/Max Int'l, Inc. v. Realty One, Inc., 271 F.3d 633 (6th Cir. 2001), cert. denied, 935 U.S. 987, 122 S.Ct. 1539, 152 L.Ed.2d 466 (2002) (court retained jurisdiction to enforce terms of settlement agreement when the dismissal order included language that "[a]ny subsequent order

---

[10] The dismissal with prejudice distinguishes this case from the unpublished case of Michigan Regional Council of Carpenters v. New Century Bancorp, Inc., 99 Fed.Appx. 15 (Apr. 8, 2004), cited by the defendant. Other cases cited by the defendant involve situations in which an agreed order of dismissal with prejudice had not been entered, are from other jurisdictions and not controlling, predate Kokkonen, or are otherwise inapposite.

10

setting forth different terms and conditions relative to the settlement and dismissal of the within action shall supersede the within order"). Although the defendant is, of course, free to seek enforcement of the settlement agreement in an independent action for specific performance, the Court finds that, upon the dismissal of this action with prejudice, the Court no longer has jurisdiction to consider a motion to enforce the settlement agreement.

Having denied the plaintiff's motion to set aside the dismissal order, the defendant is in the position of having obtained some of the relief it sought by the motion to enforce. The only portion of the defendant's motion to enforce that is not resolved and is hereby denied for lack of jurisdiction is its request for an award of attorney's fees against the plaintiff for filing the motion to set aside the dismissal order.

Orders will be entered in accordance with this memorandum.

_____
JULIET GRIFFIN
United States Magistrate Judge